**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| ACCESS SERVICES OF NORTHERN ILLINOIS, and SMALL EMPLOYER BENEFITS TRUST PLAN, | |
| Plaintiffs, | |
| v. | |
| CAPITOL ADMINISTRATORS, INC., CAI HOLDINGS, LUCENT HEALTH SOLUTIONS, LLC, LUCENT HEALTH CARE MANAGEMENT LLC, MICHAEL TATE, WILLIAMS-MANNY, INC., ARTHUR J. GALLAGHER & CO., AND GALLAGHER BENEFIT SERVICES, INC. | |
| Defendants. | Case No. 3:19-cv-50050 |
| | Honorable Iain D. Johnston |
| THOMAS FAETH-MILLER | |
| Third-Party Plaintiff, | |
| v. | |
| ACCESS SERVICES OF NORTHERN ILLINOIS, SMALL EMPLOYER BENEFITS TRUST PLAN, CAPITOL ADMINISTRATORS, INC., CAI HOLDINGS, INC., LUCENT HEALTH SOLUTIONS, LLC, LUCENT HEALTH CARE MANAGEMENT LLC, MANNY, INC., ARTHUR J. GALLAGHER & CO., AND GALLAGHER BENEFIT SERVICES, INC. | |
| Third-Party Defendants. | |

1

## MEMORANDUM OPINION AND ORDER

Thomas Faeth-Miller's spouse, Gyl, was an employee of Access Services of Northern Illinois. He believed he was covered by the company's insurance benefit plan. Dkt. 135, ¶ 9. Between September 2017 and August 2018, he incurred more than one million dollars in medical bills due to significant health problems, including cancer and two strokes. *Id.* ¶ 42. Because of a change in the way Access Services of Northern Illinois provided health insurance, the plan was no longer fully funded and instead relied on stop-loss insurance.[1] The stop-loss insurance, however, was never procured, and his bills went unpaid. *Id.* ¶¶ 2–3. He then intervened in this lawsuit to assert his rights to insurance coverage. Dkt. 42. Before the Court is a motion to dismiss his second amended third-party complaint. For the reasoning below, that motion [138] is denied.

## I. Background

In 2017, Access Services of Northern Illinois restructured its employee health insurance plan and renamed it the Small Employer Benefits Trust Plan (as plaintiffs, the Plan and the company are hereinafter referred to as the "Access Services Parties").[2] Dkt. 135, ¶ 11. The restructuring meant that the Access Services Parties moved from a fully funded plan to a self-funded plan with stop-loss

---

[1] Stop-loss insurance "protects a self-insured employer from catastrophic losses or unusually large health costs of covered employees. . . . The employer and the insurance carrier agree to the amount the employer will cover, and the stop-loss insurance will cover claims exceeding that amount." *Stop-loss insurance*, Black's Law Dictionary (11th ed. 2019).
[2] The factual allegations as outlined here are taken are taken from Thomas Faeth-Miller's second amended third-party complaint, as that is what the present motion attempts to dismiss under Rule 12(b)(6).

2

insurance. *Id.* ¶ 24. The stop-loss insurance was critical because it was supposed to cover the employee health expenses above what the employer could afford on the self-funded portion of the plan.[3] *Id.* ¶¶ 26–29.

The move was prompted by a suggestion from Williams-Manny, Inc. *Id.* ¶ 24. Williams-Manny was then purchased by Arthur J. Gallagher & Co., who then transferred responsibility over the plan to its subsidiary Gallagher Benefit Services, Inc. (together hereinafter referred to as the "Gallagher Parties"). *Id.* ¶¶ 18–19. The Gallagher Parties, as part of the restructuring, represented that they would procure stop-loss insurance on behalf of the Access Services Parties in exchange for commissions. *Id.* ¶ 17. Although the Gallagher Parties collected the commission payments, they never purchased the stop-loss insurance. *Id.* ¶ 3. Instead, they delegated the responsibility to obtain stop-loss insurance for the Access Services Parties to Capitol Administrators, Inc. *Id.* ¶¶ 3, 12.

Capitol Administrators was then acquired by CAI Holdings, who assumed all Capitol Administrators' liabilities. *Id.* ¶ 13. Lucent Health Solutions, LLC, then acquired CAI Holdings and assumed the same liabilities. *Id.* ¶ 14. Lucent Health Care Management LLC represented that it would provide stop-loss insurance for the plan. *Id.* ¶ 15. Neither the Faeth-Miller's complaint nor the Access Services Parties' complaint allege what relationship Lucent Health Care Management LLC had to the rest of the Lucent Parties. Faeth-Miller's complaint does not name

---

[3] The stop-loss insurance was even more critical because Access Services was only a 50-employee company with limited resources. Dkt. 135, ¶ 26. Still, the second amended third-party complaint notes that the plan contained "no terms regarding stop-loss insurance, meaning including stop-loss insurance was not part of the Plan." *Id.* ¶ 24.

Michael Tate as a defendant, but for completeness, the Court notes that the Access Services Parties' third amended complaint names him as a defendant and alleges that he was the General Manager and Senior Vice President of Capitol Administrators, Inc. Dkt. 131, ¶ 10.

Together, these original defendants are hereinafter referred to as the "Lucent Parties." The Lucent Parties also failed to procure the stop-loss insurance. Dkt. 135, ¶ 3. They then allegedly concealed the failure to procure insurance "by using the premium money to cover participants' claims, until the claims exceeded the amount of premiums." *Id.* Neither the Access Services Parties nor the Gallagher Parties timely requested confirmation from the Lucent Parties to ensure the insurance had been purchased. *See id.* ¶ 4.

In short, the Access Services Parties sued the Lucent Parties and the Gallagher Parties for the failure to procure that insurance which it paid for to insure its employees and their family members. Dkt. 131. Thomas Faeth-Miller intervened under Federal Rule of Civil Procedure 24 and sued everyone (except Michael Tate it seems). Dkts. 42, 135. He alleges civil violations of the Employee Retirement Income Security Act (ERISA), failure to insure, breach of contract to insure, and negligent failure to ensure. Dkt. 135. The Gallagher Parties then filed motions to dismiss Thomas Faeth-Miller's second amended third-party complaint and the Access Services Parties' third amended complaint. Dkts. 138, 144.

Because the alleged facts come from different complaints, the Court has chosen to issue two separate opinions.

4

## II. Analysis

To defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). Furthermore, the burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court.").

The Gallagher Parties move to dismiss counts II through V of the second amended third-party complaint on three grounds. They contend that (A) an insurance producer that allegedly fails to procure insurance is not a fiduciary under ERISA, dkt. 139, at 4; (B) they owed no duty to Faeth-Miller because he was not their client and they did no business with him, *id.* at 6; and (C) none of the Gallagher Parties entered into a contract to procure insurance with Faeth-Miller and he is not a third-party beneficiary of any purported contract between the Access Services Parties and the Gallagher Parties, *id.* at 9. Basically, the Gallagher Parties

argue that Faeth-Miller is a stranger; there is no relationship, so there is no duty either contractually or statutorily.

### A. Fiduciary under ERISA

The Gallagher Parties first contend that count II of the second amended third-party complaint must be dismissed because it contains insufficient allegations to support a finding that they acted as ERISA fiduciaries. Dkt. 139, at 4. The Employee Retirement Income Security Act (ERISA) was passed to protect "the interests of participants in employee benefit plans and their beneficiaries" by, among other things, "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b). The definitions section of ERISA addresses fiduciaries:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B).

§ 1002. Faeth-Miller responds that he has sufficiently alleged that the Gallagher parties acted as ERISA fiduciaries because he alleges that they represented that they would procure the stop-loss insurance but then delegated that responsibility to the Lucent Parties and failed to adequately supervise them. Dkt. 161, at 3–4. In other words, Faeth-Miller contends that because the Access Services Parties gave

the Gallagher Parties discretion to determine which insurer to contract with and which policy to purchase, they became fiduciaries for that purpose. *Id.* at 4.

In support, the Faeth-Miller cites to *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984). In *Leigh*, the Seventh Circuit explained that an individual can be an ERISA fiduciary for some purposes while not being a fiduciary for other purposes. The court determined that because two of the defendants had discretion to choose the plan administrator, they were fiduciaries for that purpose. *Id.* The Seventh Circuit in *Howell v. Motorola, Inc.* then reaffirmed that reasoning:

> Under this court's decision in *Leigh v. Engle*, a company can be a plan fiduciary when there is evidence that it played a role in appointing the administrators of the plan (and thus had a duty to choose appointees wisely and to monitor their activities). In addition, *Leigh* suggests that a company might also act as a fiduciary to the extent that it exercises *de facto* control over plan decisions through the plan administrators that it selects. Either of those activities—appointing administrators or exercising control through appointees—falls on the plan management or administration side of the line drawn in *Varity*.

633 F.3d 552, 562 (7th Cir. 2011). Thus, if the Gallagher Parties were responsible for selecting the insurance plan or its administrator as alleged, they were fiduciaries for that purpose even if they were not fiduciaries for the purpose of administering the plan itself.

Taking Faeth-Miller's allegations in the second amended third-party complaint as true, he has sufficiently alleged that the Gallagher Parties acted as fiduciaries for the purpose of selecting the plan administrator. He alleges that they acted as an insurance broker, represented that they would obtain the necessary stop-loss insurance, charged and collected commissions, and then delegated the

responsibility to obtain the insurance to the Lucent Parties, as third-party administrators of the plan. Dkt. 135, ¶¶ 3, 17, 24[4]. Under the precedent established in *Leigh* and *Howell*, that is enough.

The Gallagher Parties argument to the contrary is not persuasive. They first cite to *Daniels v. Bursey*. There, the district court explained that "a fiduciary of an ERISA plan must at least exercise some discretionary authority or control over a Plan's management or the disposition of its assets." Thus, the court rejected the argument that the defendants were ERISA fiduciaries when they "marketed and sold" the severance trust executive program to the plaintiffs. No. 03 C 1550, 2003 WL 22053580, *2 (N.D. Ill. Sept. 3, 2003). But, according to the allegations here, the Gallagher Parties did more than market and sell an insurance package. They were allegedly responsible for selecting the stop-loss insurance and—once they delegated that task to the Lucent Parties—they were responsible for ensuring their delegate performed that task.

The Gallagher Parties next cite to *Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288 (7th Cir. 1989). But that case dealt with financial investments, not health insurance and was decided after a trial, not on a motion to dismiss. And the defendant did not

---

[4] The Court notes that paragraph 24 of Faeth-Miller's second amended third-party complaint alleges that "[t]he Plan itself, however, would contain no terms regarding stop-loss insurance, meaning including stop-loss insurance was not part of creating the Plan." Dkt. 135, ¶ 24. This allegation is perplexing. For starters, it prompts the question whether anyone can be a fiduciary for the purpose of selecting stop-loss insurance if the existence of stop-loss insurance is not actually a part of the plan. Notably, this allegation does not exist in the Access Services Parties' third amended complaint. Still, because this point was not argued by the Gallagher Parties, or even mentioned, the Court does not address it.

8

maintain discretion to choose the investment itself. "The Plan decided which securities to purchase and in fact would choose from among the few recommended by Jones during the presentations. The only discretion that Jones had was to choose which few securities to recommend to the Plan." *Id.* at 292. Unlike in *Farm King Supply*, the Gallagher Parties did not seek out possible stop-loss insurance options for the Plan. Instead, they were allegedly the sole parties responsible for procuring the insurance—a responsibility they delegated to the Lucent Parties. Thus, they did allegedly have the type of discretion that was lacking in *Farm King Supply*. They and the parties to which they delegated responsibility solely had the authority as to which stop-loss insurance to procure. Indeed, the pleadings seem to have anticipated this argument and have pleaded around it. Dkt. 135, at 8. Defendants cannot simply ignore allegations that are contrary to their legal positions.

The Gallagher Parties generally cite to *Am. Fed. of Unions Local 102 v. Equitable Life Assurance Soc.*, 841 F.2d 658 (5th Cir. 1988) in a passing single sentence without a pinpoint cite. The Court is unsure what point was trying to be conveyed by the Gallagher Parties. But the Court notes that this case states, "The term fiduciary includes those to whom some discretionary authority has been delegated." *Id.* at 663. That is precisely what Faeth-Miller alleges here.

The Gallagher Parties next cite to *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 105 F. Supp. 2d 889 (N.D. Ill. 2000), in which the district court determined, at summary judgment, that the defendant was not a fiduciary. But that decision supports Faeth-Miller's position. There, the defendant had not exercised discretion

over the plan. The defendant did not become a fiduciary by offering its insurance for sale to plaintiff, because plaintiff maintained the discretion to purchase insurance elsewhere. *Id.* at 893–94 ("Mass Mutual had no control over which insurer and which insurance product Gallagher ultimately chose for the plan."). The plaintiff in that case also asserted that the defendant had "exercised discretionary authority over administering certain aspects of the plan . . . when it unilaterally transferred the plan-related services work" to a third party. *Id.* at 895. But the court noted that those services were ministerial and did not require the exercise of discretion, and regardless, the "evidence indicate[d] that the decision to transfer the plan-servicing work was not a unilateral one. Indeed, Gallagher signed off on the transfer." *Id.*

Thus, that case supports the proposition that exercising *discretion*, rather than performing ministerial functions, creates the fiduciary duty. Here, the Gallagher Parties exercised discretion in the procurement of insurance by allegedly delegating that task to the Lucent Parties without sign off from the Access Services Parties and after representing that they would procure the stop-loss insurance for the plan.[5] That decision, unlike that in *Gallagher Corp.*, was unilateral. Therefore,

---

[5] The Court notes that the Gallagher Parties' reply brief seems to imply that they merely recommended the Lucent Parties. Dkt. 166, at 4. Although this may turn out to be true and may be shown by evidence at a later stage in the litigation, on a motion to dismiss the Court merely accepts as true the allegations in a plaintiff's complaint. The Gallagher Parties point out that "[w]hat is essential is the power to make decisions for the plan." *Id.* But that is the point. Faeth-Miller alleges that the Gallagher Parties "had discretion in choosing an appropriate insurer for the Plan." Dkt. 135, ¶ 32. The Gallagher Parties' might believe that is an incorrect assessment of the relationship, and they will be given the opportunity to present evidence to support that. But at this stage, the Court merely looks to the well-pleaded allegations. A motion to dismiss is before the Court, not summary judgment.

10

the Gallagher Parties have failed to meet their burden of persuasion to show that count II of the second amended third-party complaint should be dismissed, and their motion on that ground is denied.[6]

### B. Failure to Insure and Negligence

The Gallagher Parties next argue that counts III and V of Faeth-Miller's complaint should be dismissed because they owed no duty to him and his allegations are insufficient to put them on notice of his claims. Dkt. 139, at 6. Count III is a statutory failure to insure under Illinois state law. Dkt. 135, ¶¶ 64–76. That claim is pleaded in the alternative—in the event the Court holds them not to be fiduciaries under the plan. *Id.* ¶¶ 65–66. The same is true for Faeth-Miller's common law negligence claim in count V. *Id.* ¶ 87.

The Gallagher Parties attack both alternative claims on the same ground: that they owed no duty to Faeth-Miller by virtue of his not being a client of theirs and that Faeth-Miller has not sufficiently pleaded causation. Dkt. 139, at 6–8. They also allege that the two counts "plead the same theory for the same alleged acts, they are clearly duplicative and should be dismissed." *Id.* at 6. They further contend that the complaint "is devoid of any specific allegation that would put each of the Third-Party Defendants on notice of what that particular party purportedly did or

---

[6] In their reply brief, the Gallagher Parties also argue count II should be dismissed because of the relief sought. Dkt. 166, at 6. But this argument was not raised in their original brief in support of the motion to dismiss. The Court will not entertain arguments raised for the first time in a reply brief. Such a litigation strategy deprives opposing counsel of a fair adversarial process and simply will not fly. *See infra* Section II.B.2.

didn't do, when it allegedly breached their purported duties and utterly fails to inform" them of the basis for Faeth-Miller's claims. *Id.* at 7.

### 1. Duty and Proximate Cause

The Gallagher Parties argue that Faeth-Miller's second amended third-party complaint does not sufficiently allege duty and causation. First, the Gallagher Parties assert that Faeth-Miller "acknowledges that it was [Access Services] and not Faeth-Miller himself, who requested the Plan and who sought to obtain insurance from" the Gallagher Parties. Dkt. 139, at 7. In support, they cite to 735 Ill. Comp. Stat. 5/2-2201(a), which reads, "An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in the renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."

The Gallagher Parties seem to argue that the statute does not provide protection to third parties like Faeth-Miller "who [was] not in the position of requesting coverage." Dkt. 139, at 8. In making this argument, the Gallagher Parties contend that health insurance plans obtained through employers are different from automobile insurance plans that are obtained directly by the insured. *Id.* Thus, although the statute would cover automobile insurers, it would not protect indirect health insurance customers just because such customer "was reasonably anticipated to be likely to suffer damage in the event of an insurance producer's breach of duty." *Id.* The argument, however, is not persuasive.

12

For starters, the Gallagher Parties cite to *155 Harbor Drive Condominium Assoc. v. Harbor Point, Inc.*, 568 N.E.2d 365 (Ill. App. Ct. 1991). But that case dealt with third-party beneficiary arguments in contract law. It is not applicable to this argument or the cited statute. Furthermore, section (d) of that statute answers this question:

> While limiting the scope of liability of an insurance producer, registered firm, or limited insurance representative under standards governing the conduct of a fiduciary or a fiduciary relationship, the provisions of this Section do not limit or release an insurance producer, registered firm, or limited insurance representative from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance.

735 Ill. Comp. Stat. 5/2-2201(d). This section of the statute keeps much of traditional negligence law intact. That is bolstered by *Receivership Mgmt. v. AEU Holdings, LLC*, No. 18 C 8167, 2019 U.S. Dist. LEXIS 150278, at *51 (N.D. Ill. 2019), in which the court noted that "the Illinois Supreme Court has continued to rely on common-law principles in construing the statute." Given this language in the statute and given that the Gallagher Parties' cited cases do not apply, they have failed to meet their burden of persuasion.

To the extent that the Gallagher Parties have made the argument that they owe no duty to Faeth-Miller because the Access Services Parties and not Faeth-Miller requested coverage, that argument is also unpersuasive. The cited case, *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313 (7th Cir. 2017), does not support their position. There, the Seventh Circuit noted that "there is no evidence that any broker in the procurement chain ever requested

13

that Norman-Spencer serve as a sub-broker to procure insurance." *Id.* at 319. To be sure, that case does explain that "a duty to the insured arises only after specific coverage is requested." *Id.* at 320. It also explains that the statute "imposes on an insurance producer only a duty to exercise ordinary care." *Id.* It does not, however, stand for the proposition that insurance producers do not owe a duty to its clients' employees for whom the insurance has been purchased. The Court declines to dispense with traditional negligence principles in the absence of binding case law or clear statutory text. Defendants owe a duty to foreseeable plaintiffs.[7]

The Gallagher Parties also contend that Faeth-Miller failed to "satisfy his obligation to plead *and prove* . . . proximate cause." Dkt. 139, at 8 (emphasis added). Setting aside that a plaintiff need not prove its case in the complaint, this argument rests on the notion that the Access Services Parties allegedly "had an unequivocal obligation to pay these medical expenses, but has not paid them." *Id.* at 8 (Dkt. 135, ¶ 44. The Gallagher Parties continue that "[t]he absence of insurance funds to pay some or all of those bills is an absence felt by [Access Services], not by Faeth-Miller." *Id.* This argument is also not persuasive. The "absence" of such funds is not only felt by Access Services. It is certainly felt by Faeth-Miller, who is now allegedly sitting on more than one million dollars in medical bills that he reasonably expected

---

[7] "It is axiomatic that 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.'" *Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887–88 (Ill. 2012) (quoting *Simpkins v. CSX Trans., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012).

would be covered by the insurance coverage he obtained through his wife's employer.

The Gallagher Parties acknowledge that in deciding a motion to dismiss, the court may draw upon common sense. Dkt. 139, at 3 (*citing Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). As insurance consultants, the Gallagher Parties have to be well aware that employers are procuring coverage on behalf of their employees. Given that the Gallagher Parties were the ones that suggested the stop-loss insurance, they had to know that those employees would be harmed if the insurance was not procured. Although the Court states no opinion on the merits of Faeth-Miller's claim, the Court holds that the Gallagher Parties have failed to show any legal insufficiency in Faeth-Miller's assertions. These factual allegations sufficiently state a negligence claim and could reasonably be the basis for a jury to find proximate cause.[8] And remember that proximate cause is generally an issue of fact for finders of fact. *See First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1070 (Ill. 1999).

### 2. Duplicative Claims

The Gallagher Parties next assert that Counts III and V are duplicate—one is statutory and the other is based on common law negligence. In the memorandum in support of the motion to dismiss, the Gallagher Parties make this argument in a

---

[8] If the Gallagher Parties' motion is arguing that causation does not exist because of an intervening or superseding cause, they fail state what that cause is. Furthermore, Faeth-Miller's complaint is devoid of any facts that show a break in the causal chain from the time that the Gallagher Parties would have foreseen his injuries to the point where such injuries occurred. If such facts do exist, the Gallagher Parties will have every opportunity to prove them.

single sentence. They cite no statutory language preempting the common law claim. They also cite no case law—or anything else. They do make an ERISA preemption argument in their reply brief, but that is not good enough. The Court will not accept new arguments in the reply brief, and such arguments cannot save an already waived argument. *See* Dkt. 139 (the words "preempt" and "preemption" do not appear anywhere in the memorandum supporting the motion). Thus, the Court will not consider that argument at this stage. *United States v. Waldrip*, 859 F.3d 446, 450 n.2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived.") (citing *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011)).

### 3. Notice

The Gallagher Parties also contend that the factual allegations in the third-party complaint are not sufficient to put them on notice as to what is being asserted. Dkt. 139, at 7. But that argument also fails. The gist of the argument is that Faeth-Miller has not pleaded sufficient facts particular to each defendant; that he has lumped them together as if they are one party. The Gallagher Parties are correct that Faeth-Miller has not pleaded claims specific to each defendant. He has pleaded a contract to insure[9] between Access Services of Northern Illinois and Williams-Manny, Inc., who then was acquired by Arthur J. Gallagher & Co, who then transferred the obligation to Gallagher Benefit Services.

---

[9] Notably, the argumentation somewhat conflates the negligence and contract law analysis. But regardless, Faeth-Miller's lumping together of the defendants is not improper at this stage for either claim. And to the extent he must plead the elements of a contract, he has done so.

The Gallagher Parties complain about Faeth-Miller's lack of specificity as to each of the individual entities. But the argument lacks specificity in its support for the proposition that such lumping together is improper under Rule 8. The cited cases stand for general principles of contract law and do not contemplate the facts of the case at hand. Other courts have suggested that similar pleading does not violate Rule 8. *See, e.g.*, *United States v. Indianapolis Neurosurgical Grp. Inc.*, No. 1:06-cv-1778-JMS-DML, 2013 U.S. Dist. LEXIS 23610, at *11 (S.D. Ind. Feb. 21, 2013) (allowing the lumping of defendants together even in a heightened pleading standard); *Evans v. City of Chicago*, No. 04 C 3570, 2004 U.S. Dist. LEXIS 28511, *3–5 (N.D. Ill. Dec. 1, 2004) (allowing plaintiff to "lump" defendants together because, in part, specific details would emerge in discovery and because defendants were on sufficient notice of the alleged misconduct).

But the Gallagher Parties' argument primarily fails because this action is still at the pleading stage. Faeth-Miller has alleged a contract between his spouse's employer and Williams-Manny. He has alleged that Williams-Manny was then acquired by Arthur J. Gallagher & Co., who then assigned its duties to Gallagher Benefit Services. That is enough. If a contract or a duty exists, one of these companies was responsible. If a merger happened and if the duty to perform was transferred—or if the acquired company ceased to exist—that will be shown at a later stage in litigation. But at the pleading stage, a plaintiff cannot be expected to allege the details of another entity's merger contract and what liabilities were or were not fully acquired, which is what would effectively happen if the Court

17

required more. Rule 8 requires that Faeth-Miller sufficiently allege the existence of a contract with Williams-Manny. Faeth-Miller has done that. If that contract does not implicate the other Gallagher Parties, then those parties can move for summary judgment after discovery has produced evidence.

### C. Third-party beneficiary

The Gallagher Parties next argue that count IV—breach of a contract to insure—should be dismissed. Dkt. 139, at 9–11. They contend that "Illinois law holds that, absent an express contractual provision evidencing the parties' intent to convey upon a third-party the direct benefit of their agreement, no third-party beneficiary action will lie." *Id.* at 9. Once again, their memorandum in support of the motion to dismiss cites no case law—or any other authority—to support this argument. The argument, even if the Court does not consider it waived, is not persuasive. As Faeth-Miller point out, "The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third-person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Barba v. Vill. Of Bensenville*, 29 N.E.3d 1187, 1193 (Ill. App. Ct. 2015) (quoting *Olson v. Etheridge*, 686 N.E.2d 563, 566 (Ill. 1997)).

Here, Faeth-Miller has alleged that Access Services entered into a contract with Williams-Manny to procure stop-loss insurance, that Williams-Manny agreed and represented that it would procure such insurance, that Williams-Manny accepted commissions for its services, and then breached that contract by failing to

18

ensure its delegate purchased the insurance. Faeth-Miller has further alleged that he is the spouse of an employee of Access Services. That is more than enough to put the Gallagher Parties on notice of the claims against them and the "common understanding" of the alleged contract. And Faeth-Miller is clearly within the class of people for whom the alleged contract was established. The entire point of the alleged contract was to provide health insurance benefits to the company's employees and their dependents. And such insurance contracts are performed directly to the third-party beneficiaries. Williams-Manny may not have known Faeth-Miller's name, or ever spoken with him, but it knew that his class of persons were beneficiaries of the contract. Without such beneficiaries, these insurance contracts would be entirely pointless.

## III. Conclusion

For the reasons set forth above, the motion to dismiss the second amended third-party complaint [138] is denied.

Date: March 1, 2021

Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division

19