IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ACCESS SERVICES OF NORTHERN ILLINOIS, and SMALL EMPLOYER BENEFITS TRUST PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITOL ADMINISTRATORS, INC., CAI HOLDINGS, LUCENT HEALTH SOLUTIONS, LLC, LUCENT HEALTH CARE MANAGEMENT LLC, MICHAEL TATE, WILLIAMS-MANNY, INC., ARTHUR J. GALLAGHER & CO., AND GALLAGHER BENEFIT SERVICES, INC. <br><br> Defendants. | Case No. 3:19-cv-50050 <br><br> Honorable Iain D. Johnston |
| THOMAS FAETH-MILLER <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ACCESS SERVICES OF NORTHERN ILLINOIS, SMALL EMPLOYER BENEFITS TRUST PLAN, CAPITOL ADMINISTRATORS, INC., CAI HOLDINGS, INC., LUCENT HEALTH SOLUTIONS, LLC, LUCENT HEALTH CARE MANAGEMENT LLC, MANNY, INC., ARTHUR J. GALLAGHER & CO., AND GALLAGHER BENEFIT SERVICES, INC. <br><br> Third-Party Defendants. | |

1

## MEMORANDUM OPINION AND ORDER

Allegations are not facts; they mean nothing if not proven by evidence. But if the allegations made by the plaintiffs and third-party plaintiff are true, then this case is a prime example of why so many people are so enraged with the health insurance system. Whether the allegations are true will be established through discovery.

\* \* \*

Before 2017, Access Services of Northern Illinois offered its approximately fifty employees health insurance through a fully funded plan. Then, on suggestion from Williams-Manny, Inc, they moved to a self-funded plan. That meant that the company paid for a portion of its employees' healthcare costs and the rest was covered by stop-loss insurance.[1] But that insurance was never purchased. The failure to procure stop-loss insurance gave rise to the claims in this suit.

## I. Background

Arthur J. Gallagher & Co. purchased Williams-Manny, and then transferred responsibility to purchase stop-loss insurance to its subsidiary—Gallagher Benefit Services (together hereinafter referred to as the "Gallagher Parties"). Dkt. 131, ¶¶ 12–13. The Gallagher Parties then delegated the responsibility to purchase stop-loss insurance to Capital Administrators, which was then purchased by CAI Holdings, who was then purchased by Lucent Health Solutions. Then Lucent Health

---

[1] Stop-loss insurance "protects a self-insured employer from catastrophic losses or unusually large health costs of covered employees. . . . The employer and the insurance carrier agree to the amount the employer will cover, and the stop-loss insurance will cover claims exceeding that amount." *Stop-loss insurance*, Black's Law Dictionary (11th ed. 2019)

2

Care Management represented that it would provide the health insurance, though the complaint does not allege what relationship that company has to the others. *Id.* ¶¶ 5–8, 14. Those companies, along with defendant Michael Tate (allegedly the General Manager and Senior Vice President of Capitol Administrators) are together hereinafter referred to as the "Lucent Parties." *Id.* ¶ 10.

Because the stop-loss insurance was never purchased, Access Services employees' medical bills went unpaid. *Id.* ¶¶ 25, 28. Because of the failure, Access Services, along with the restructured plan, filed this suit against the Gallagher Parties and the Lucent Parties. The spouse of one of the covered employees—who has incurred over one million dollars in unpaid medical bills—then intervened under Federal Rule of Civil Procedure 24. Dkt. 42. After moving to dismiss the third-party complaint, dkt. 138, the Gallagher Parties now move the Court to dismiss counts VI through VIII of the third amended complaint under the same flawed theories as its motion to dismiss the second amended third-party complaint, dkt. 144. Here again, the motion [144] is denied.

## II. Analysis

To defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded allegations and

3

views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). Furthermore, the burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court.").

The Gallagher Parties move to dismiss counts VI through VIII of the third amended complaint on three grounds: (A) that count VI fails to adequately plead a contract because it does not allege facts specific to each of the Gallagher Parties, dkt. 145, at 3; (B) that count VII common law negligence is duplicative of count V, *id.* at 5; and (C) that count VIII fails because the Gallagher Parties did not act as fiduciaries and did not misappropriate funds, *id.* at 6. All three arguments fail.[2]

### A. Contractual Allegations

The Gallagher Parties argue that the Access Services Parties contractual allegations are insufficient. They also seem to argue that the Access Service Parties improperly lumped together defendants in the contractual claim. Both arguments fail.

---

[2] Just as in the motion to dismiss the third-party complaint, the Gallagher Parties raise new arguments in reply that were not raised in their memorandum in support of the motion to dismiss. They argue in reply for ERISA preemption and for the Court to decline to exercise its supplemental jurisdiction. Neither argument will be entertained. *United States v. Waldrip*, 859 F.3d 446, 450 n.2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived.") (citing *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011)). Furthermore, the argument that this Court should decline to exercise supplemental jurisdiction is moot because the Court denies the motion to dismiss the Access Services Parties' federal claim.

First, the allegations sufficiently allege a breach of contract. At bottom, a contract requires the basic ingredients of an offer, an acceptance, and consideration. *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977). Furthermore, such mutual assent is presumed "[s]o long as the parties manifest a common understanding of the policy's provisions . . ." *Devers v. Prudential Prop. & Cas. Ins. Co.*, 408 N.E.2d 460, 464 (Ill. App. Ct. 1980).

Here, that common understanding is present in the allegations. The third amended complaint alleges that Williams-Manny promised to provide stop-loss insurance for the plan and received commissions as consideration. Dkt. 131, ¶¶ 11, 146–47. That is enough to defeat a motion to dismiss. The Gallagher Parties argument that the monies paid went to other defendants is not persuasive. The complaint alleges that the Access Services Parties made payments as consideration to the Gallagher Parties. Although that may not be borne out by discovery, the allegation is enough at this stage.

**B. Failure to Insure and Negligence**

The Gallagher Parties next argue that Count VII should be dismissed because it "essentially pleads the same theory" and is "clearly duplicative." Notably, this argument is at least somewhat better than the single-sentence waived argument in the motion to dismiss the third-party complaint. Dkt. 139, at 7. In this motion, the Gallagher Parties combine this one sentence argument with another discussion that they included in the subsequent argument in the last motion—that 735 Ill. Comp. Stat. 5/2-2201 governs and defines breach of duty actions against

5

insurance producers and that Illinois courts "have not considered negligence claims grounded in more general negligence principles." Dkt. 145, at 5.

If the Gallagher Parties are making a preemption argument, it is insufficient.[3] The Court is not here to fill in the blanks for counsel, who clearly knows how to argue for preemption, because they did it in reply. Instead of developing a preemption argument in the main brief—thereby giving the Access Services Parties a legitimate chance to respond—the Gallagher Parties have chosen to include a cursory-at-best argument in their motion, saving their primary argument for the reply brief. That is a waiver. *See United States v. Waldrip*, 859 F.3d 446, 450 n.2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived.") (citing *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011)); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."). If the common law claim was preempted by the Illinois legislature, the Gallagher Parties can argue that on summary judgment.

---

[3] The one case cited by the Gallagher Parties—*M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313 (7th Cir. 2017)—rejected the common law negligence claim because it was "neither well developed nor persuasive." *Id.* at 320. Furthermore, the fact that *M.G. Skinner* explains that Illinois courts have been "reluctant to expand the duties of brokers" beyond those articulated in the statute does not stand for the proposition that plaintiffs cannot sue under a common law negligence theory. "Reluctant" does not mean preempted by any common-sense definition. *Reluctant*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/reluctant (defining reluctant as "feeling or showing aversion, hesitation, or unwillingness").

The Gallagher Parties also argue against the Access Services Parties lumping together of defendants. As stated in the Court's order denying the motion to dismiss the third-party complaint, that argument fails at this stage.

Other courts have suggested that similar pleading does not violate Rule 8. *See, e.g.*, *United States v. Indianapolis Neurosurgical Grp. Inc.*, No. 1:06-cv-1778-JMS-DML, 2013 U.S. Dist. LEXIS 23610, at *11 (S.D. Ind. Feb. 21, 2013) (allowing the lumping of defendants together even in a heightened pleading standard); *Evans v. City of Chicago*, No. 04 C 3570, 2004 U.S. Dist. LEXIS 28511, *3–5 (N.D. Ill. Dec. 1, 2004) (allowing plaintiff to "lump" defendants together because, in part, specific details would emerge in discovery and because defendants were on sufficient notice of the alleged misconduct). Critically, the Gallagher Parties cite no contrary authority. Like Faeth-Miller, the Access Services Parties have pleaded that Arthur J. Gallagher & Co. acquired Williams-Manny—and its liabilities—and then transferred the duty to perform to Gallagher Benefit Services. That is enough at this stage. Dkt. 131, ¶¶ 11–13.

If a contract or a duty exists, one of these companies was responsible. If a merger happened and if the duty to perform was transferred—or if the acquired company ceased to exist—that will be shown at a later stage in litigation. But at the pleading stage, a plaintiff cannot be expected to allege the details of another entity's merger contract and what liabilities were or were not fully acquired, which is what would effectively happen if the Court required more. Rule 8 requires that the Access Services Parties sufficiently allege the existence of a contract with Williams-Manny.

7

They have done that. If that contract does not implicate the other Gallagher Parties, then those parties can move for summary judgment after the close of all discovery.

**C. Fiduciary Duty**

Finally, the Gallagher Parties argue that they are not fiduciaries and that they cannot be liable unless they misappropriated funds. In support, they cite to 735 Ill. Comp. Stat. 5/2-2201(B), which they argue limits their liability to conduct involving "the wrongful retention or misappropriation of any money that was received as premiums or payment of a claim." Dkt. 145, at 7. But they fail to cite any authority for how a state statute has any relevance to ERISA, a federal law. The Court declines to fill in the blanks for the Gallagher Parties. On this point, they have failed to meet their burden of persuasion.

The Gallagher Parties also contend, as they did in the motion to dismiss the third-party complaint, that they are not fiduciaries under ERISA because they exercised no discretion over the plan. Dkt. 145, at 7. As stated in the order denying the motion to dismiss the third-party complaint, this argument is not persuasive. To be sure, the Gallagher Parties are correct that a party must exercise discretion to become a fiduciary—ministerial tasks are not enough. But the allegations claim they did exercise discretion. Defendants cannot simply ignore allegations in pleadings when moving to dismiss.

In *Leigh v. Engle*, 727 F.3d 113, 133 (7th Cir. 1984), the Seventh Circuit explained that an individual can be an ERISA fiduciary for some purposes while not

8

being a fiduciary for other purposes. The court determined that because two of the defendants had discretion to choose the plan administrator, they were fiduciaries for that purpose. *Id.* The Seventh Circuit in *Howell v. Motorola, Inc.* then reaffirmed that reasoning:

> Under this court's decision in *Leigh v. Engle*, a company can be a plan fiduciary when there is evidence that it played a role in appointing the administrators of the plan (and thus had a duty to choose appointees wisely and to monitor their activities). In addition, *Leigh* suggests that a company might also act as a fiduciary to the extent that it exercises *de facto* control over plan decisions through the plan administrators that it selects. Either of those activities—appointing administrators or exercising control through appointees—falls on the plan management or administration side of the line drawn in *Variety*.

633 F.3d 552, 562 (7th Cir. 2011). Thus, if the Gallagher Parties were responsible for selecting the insurance plan or its administrator, they were fiduciaries for that purpose even if they were not fiduciaries for the purpose of administering the plan itself.

The Access Services Parties have sufficiently alleged that the Gallagher Parties acted as fiduciaries for the purpose of selecting the plan administrator. They allege that they acted as an insurance broker, represented that they would obtain the necessary stop-loss insurance, charged commissions, and then delegated the responsibility to obtain the insurance to the Lucent Parties, as third-party administrators of the plan. Dkt. 131, ¶¶ 11–13, 90, 95–104. Under the precedent established in *Leigh* and *Howell*, that is enough.

The Gallagher Parties cite to the same cases they cited to in the motion to dismiss the third-party complaint. As stated in the Court's order denying that

9

motion, those cases all presented different circumstances. The parties at issue in those cases did not have the kind of discretion alleged in the Access Services complaint. Those cases stand for the proposition that offering insurance plans for sale or recommending options does not create the type of discretion required for a party to become an ERISA fiduciary. But exercising final discretion in the choice of which insurance provider and plan to choose does create a fiduciary duty under ERISA. Dkt. 190, at 8–10. Critically, on a motion to dismiss, the Court must accept as true a defendant's allegations. The Court makes no finding or determination as to whether the Gallagher Parties actually were ERISA fiduciaries. The Access Services Parties will have to present evidence to prove that. Maybe the Gallagher Parties did not have the type of discretion alleged, but the allegation is all that is required at this stage.

## III. Conclusion

For the reasons set forth above, the motion to dismiss the third amended complaint [144] is denied.

Date: March 1, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division